# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| MISTY ELLISON, LAWANNA LACEY<br>& GARRETT BROWN, | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Case No. 2:15-cv-1650-JRG-RSP |
| CANTON LONG TERM CARE, LLC, | §<br>§<br>§ | |
| Defendant. | §<br>§ | |

## MEMORANDUM ORDER

Before the Court is Defendant Canton Long Term Care, LLC's ("Canton") Motion to

Compel Arbitration and Brief in Support. (Dkt. No. 12.) The Court has considered the arguments

and finds that Canton has not shown that an enforceable agreement to arbitrate existed between

Plaintiffs and Canton.

## I. FACTUAL BACKGROUND

Plaintiffs Misty Ellison, Garrett Brown, and Lawanna Lacey received copies of Canton's

Employee Handbook the day they were hired by Canton. (Dkt. No. 12 at 1.) Canton hired Ellison

to be a transportation aid and hired Brown and Lacey to be certified nursing aids. (Dkt. No. 12 at

1.) The Handbook included an "Arbitration of Employment Claims" section, which stated in

relevant part:

> Any and all disputes between an Employee and the Company except as noted
> below, are subject to final and binding arbitration which shall be the sole and
> exclusive remedy for such disputes.
>
> ***
> **By signing the Employee Handbook Acknowledgement, the Employee agrees
> and consents to this arbitration policy**; however, the Employee may opt out of
> the arbitration policy by providing written notice to the Administrator/CEO or

Human Resources Representative within 30 days from date of hire or receipt of the August 2012 Employee handbook, whichever is later.

(Dkt. No. 12-2 at 6 (emphasis added).)

The "Employee Handbook Acknowledgement" mentioned above contained ten clauses. One bolded clause stated that the Employee Handbook was not an employment contract, and nine clauses, with lines next to them for initials, stated (1) that the employment was at will, (2) how the Employee Handbook applied to parties and third-parties, (3) that the employee must certify that he or she was not bound by a non-compete agreement, (4) that the person initialing the Employee Handbook Acknowledgment "underst[ood] and agree[d] to the terms of the Company Arbitration [P]olicy contained within this Employee Handbook," (5) that parts of the Handbook are severable, and (6) that "This Agreement" was enforceable by Canton's successor and only modifiable in writing if signed by both parties. The Employee Handbook Acknowledgement is reproduced below:

**Employee Handbook**

**Employee Acknowledgement**

I acknowledge that I have received a copy of the Employee Handbook dating January 2010. I understand that I am expected to read and comply with the Handbook and any revisions to it.

I understand the following:
       **THE EMPLOYEE HANDBOOK IS NOT INTENDED TO BE, NOR SHOULD I CONSTRUE IT, AS AN EXPRESS OR IMPLIED CONTRACT OF EMPLOYMENT OR A GUARANTEE OF EMPLOYMENT FOR ANY SPECIFIC PERIOD OF TIME, IT ALSO IS NOT INTENDED TO GUARANTEE TO ME ANY SPECIFIC TERMS OR BENEFITS OF EMPLOYMENT**
____ My employment is at will, meaning that either the Company or I can terminate my employment at any time and for any reason with or without cause or notice. No written material may be distributed or oral representations made to me that contradict the employment at-will standard.
____ The Employee Handbook outlines certain standards, policies, procedures, programs and benefits but is not all-inclusive. I am responsible for consulting

with my supervisor, the next level of management, or the Human Resources Department regarding questions not addressed in the Handbook.

_____ The Employee Handbook is subject to change at the sole discretion of the Company and without prior notice. The Company may deviate from its standards, policies, procedures, programs, and benefits, including those discussed in the Handbook, when it deems necessary in its sole discretion. This Employee Handbook supersedes and replaces all prior Employee Handbooks, manuals, or policies used by the Company or any predecessor owner or operator.

_____ I understand that if I am represented by a union the terms and conditions of my employment are governed by the collective bargaining agreement between the Company and the union. However, I understand that Employee Handbook policy will apply when the collective bargaining agreement does not include a specific policy covered by the Employee Handbook.

_____ I hereby represent that, except as disclosed in writing to the Company, I am not bound by the terms of any agreement with any other party to refrain from using or disclosing any legally protected business information in the course of subsequent employment or to refrain from competing, directly or indirectly, with the business of any other party.

_____ I hereby understand and agree to the terms of the Company Arbitration [P]olicy contained within this Employee Handbook.

_____ The provisions of this Employee Handbook are severable. If any provision is found to be unenforceable, in whole or in part, it shall be construed, limited or stricken so as to make it enforceable consistent with the intentions of the parties.

_____ This Agreement shall inure to the benefit of and be enforceable by the Company and its successors and assigns.

_____ This Agreement may not be modified, changed or discharged in whole or in party except by a written agreement, signed by the parties.


_____
Employee's Name Printed or Typed


_____          _____
Employee's Signature                                              Date


(Dkt. No. 12-2 at 8.)

## II. APPLICABLE LAW

When considering a motion to compel arbitration, a court must determine if the parties have agreed to arbitrate the dispute in question. *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005). "This [] involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls

within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

If the parties dispute the validity of an agreement to arbitrate, the party asserting the agreement is invalid must offer evidence to support its position. *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 364 (5th Cir. 2015). The burden then shifts to the party that seeks arbitration to "prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Id.* at 365. The validity and enforceability of an agreement to arbitrate is determined by the state law that governs the agreement to arbitrate. *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004).

### III. ANALYSIS

This dispute turns on two related issues. **First**, whether the clause: "This Agreement may not be modified, changed or discharged . . . except by a written agreement" applies to the Company Arbitration Policy. **Second**, whether the clause: "The Employee Handbook is subject to change at the sole discretion of the Company" applies to the Company Arbitration Policy. The issues are related because if "This Agreement" refers to the Company Arbitration Policy, then the first clause provides that Canton is not allowed to unilaterally change the Company Arbitration Policy. Conversely, if "[t]he Employee Handbook is subject to change at the sole discretion of the Company" applies to the Company Arbitration Policy, then that language indicates that Canton is indeed allowed to unilaterally change the Company Arbitration Policy.

Canton's ability to unilaterally or retroactively change the Company Arbitration Policy is central to this case because the existence or non-existence of that ability determines whether the disputed agreement to arbitrate is valid. Texas law is clear. If Canton possesses the right to unilaterally or retroactively change the Company Arbitration Policy, then no agreement to

arbitrate exists because the policy is an illusory agreement. *See Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). "Put differently, where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party can suddenly change the terms of the agreement to avoid arbitration, then the agreement was illusory from the outset." *24 Hour Fitness*, 669 F.3d at 205; *see also Nelson v. Watch House Int'l, L.L.C.*, 815 F.3d 190, 192 (5th Cir. 2016) ("Though a mutual agreement to arbitrate [] is sufficient consideration to support an arbitration agreement, the agreement is illusory '[w]hen one party has the unrestrained unilateral authority to terminate its obligation to arbitrate.'" (quoting *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008)).

**A.      The Company Arbitration Policy may be an illusory agreement because it could be "subject to change at the sole discretion of the Company."**

The Court finds that the language of the Employee Handbook Acknowledgement suggests the Company Arbitration Policy is an illusory agreement. The Employee Handbook Acknowledgement first states: "the Company Arbitration [P]olicy [is] contained within this Employee Handbook." It then states: "[t]he Employee Handbook is subject to change at the sole discretion of the Company." (Dkt. No. 12-2 at 8.) The clauses together assert that the Company Arbitration Policy is "within" the Employee Handbook and as part of the Employee Handbook, the Company Arbitration Policy can be changed at Canton's sole discretion. "[A] mutual agreement to arbitrate [] is sufficient consideration to support an arbitration agreement, [but] the agreement is illusory '[w]hen one party has the unrestrained unilateral authority to terminate its obligation to arbitrate.'" *Nelson*, 815 F.3d at 192 (quoting *Morrison*, 517 F.3d at 254).

Furthermore, the Employee Handbook Acknowledgement appears to grant Canton the unilateral right to avoid arbitration if an employee seeks to compels it. The Company Arbitration Policy is "within" the Employee Handbook and the Employee Handbook Acknowledgement

states: "[t]he Company may **deviate** from its standards, policies, procedures, programs, and benefits, including those discussed in the Handbook, when it deems necessary in its sole discretion." (Dkt. No. 12-2 at 8 (emphasis added).) This clause suggests that Canton may decide to not enforce or to "deviate" from the arbitration policy "when it deems necessary in its sole discretion." The Fifth Circuit held in *24 Hour Fitness* that even when an agreement to arbitrate can only be changed after an employer has provided advance notice, the agreement may not be enforceable if "[t]he plain language of the modification provision gives [the employer] the unilateral power, at any time, to elect not to enforce any policy or provision in the Handbook." *24 Hour Fitness*, 669 F.3d at 208.

In its Motion, Canton asserts that the Company Arbitration Policy is not an illusory agreement. Canton states that the clauses in the Employee Handbook Acknowledgment show that Canton cannot unilaterally change the Company Arbitration Policy. Specifically, Canton asserts "This Agreement" in the Employee Handbook Acknowledgement refers to the Company Arbitration Policy, as "there is only one agreement made in this document." (Dkt. No. 23 at 2.) Because "This Agreement" refers to the Company Arbitration Policy, Canton argues, the clause "This Agreement may not be modified, changed or discharged . . . except by written agreement, signed by the parties" applies to the Company Arbitration Policy.

Canton contends that this means the Company Arbitration Policy is not an illusory agreement because "neither party can unilaterally avoid its promise to arbitrate – it can only be changed 'by written agreement, signed by the parties.'" (Dkt. No. 23 at 2.) Canton supports its position by pointing out the Employee Handbook Acknowledgement uses "agree" first when it says: "I hereby understand and agree to the terms of the Company Arbitration Policy contained

6

within the Employee Handbook." (Dkt. No. 23 at 2.) Canton contends all subsequent uses of "This Agreement" refer back to the word "agree." (Dkt. No. 23 at 2.)

**B.     "This Agreement" does not clearly refer to the Company Arbitration Policy.**

The Court concludes that Canton has not shown by a preponderance of the evidence that an enforceable agreement to arbitrate existed between Plaintiffs and Canton. The Court will not grant Canton's motion to compel arbitration because the term "This Agreement" in the Employee Handbook Acknowledgement can refer to, at minimum, either the Employee Handbook Acknowledgement itself or to the Company Arbitration Policy. Texas law states that "if [a] contract is subject to two or more reasonable interpretations after applying the [] rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). A court should not grant a motion to compel arbitration without first resolving this type of ambiguity through consideration of the parole evidence. *See J.M. Davidson*, 128 S.W.3d at 230–31 ("[W]e hold that the agreement is ambiguous and must be remanded to the trial court to determine what the parties intended by the clause 'The 'Company' reserves the right to unilaterally abolish or modify any personnel policy without prior notice.'").

Canton's argument, as described above, explains why "This Agreement" can reasonably refer to the Company Arbitration Policy. The Court now finds that "This Agreement" can also reasonably refer to the Employee Handbook Acknowledgement itself because the acknowledgement contains at least two clauses that can be considered "agreements" between the parties. First, the collective bargaining clause states: "Employee Handbook policy will apply when the collective bargaining agreement does not include a specific policy covered by the Employee Handbook." (Dkt. No. 12-2 at 8.) Read plainly, this indicates that an employee

covered by a collective bargaining agreement "agrees" to be bound by "Employee Handbook policy" if the subject of the policy is not covered in a collective bargaining agreement.

Second, the severability clause states: "The provisions of this Employee Handbook are severable. If any provision is found to be unenforceable . . . it shall be construed . . . as to make it enforceable . . . ." (Dkt. No. 12-2 at 8.) The word "unenforceable" modifies the clause "provisions of this Employee Handbook" showing that the Employee Handbook contains provisions the parties have "agreed" are enforceable. The next page of the Employee Handbook suggests these provisions include things such as Canton's "Standards of Conduct" and its "rules and policies." (Dkt. No. 12-2 at 8.)

The Court notes that its finding that "This Agreement" refers to the Employee Handbook Acknowledgement does not create superfluous clauses. *See J.M. Davidson*, 128 S.W.3d at 229 ("[W]e must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."). The clause stating: "This Agreement may not be modified, changed or discharged in whole or in part except by a written agreement, signed by the parties" means the clauses in the Employee Handbook Acknowledgment cannot be modified absent a written agreement between the parties. The clause stating: "The Employee Handbook is subject to change at the sole discretion of the Company and without prior notice" means Canton can change the terms in the Employee Handbook at its sole discretion. Applied together, the clauses indicate that Canton could, for example, change the uniform policies in the Employee Handbook and have those uniform policies be enforceable, but could not promote an employee and offer her a two-year employment contract without first obtaining a "written agreement, signed by the parties." (*See* Dkt. No. 12-2 at 8 ("No written

material may be distributed or oral representations made to me that contradict the employment at-will standard.").)

## IV. CONCLUSION

In sum, Canton has not shown by a preponderance of the evidence that an enforceable agreement to arbitrate exists between Plaintiffs and Canton because Canton has not shown that the agreement to arbitrate is not illusory. *See J.M. Davidson*, 128 S.W.3d at 230–31. The Court therefore finds that Canton's Motion to Compel Arbitration and Brief in Support (Dkt. No. 12) is **DENIED**.

**SIGNED this 19th day of May, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE